<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT WHITE,<br><br>                Plaintiff,<br><br>             v.<br><br>RUTGERS UNIVERSITY,<br>THE STATE UNIVERSITY OF NEW JERSEY,<br><br>                Defendant. | Civil Action No. 23-2597 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Rutgers University, the State University of New Jersey's ("Rutgers") motion to dismiss (ECF No. 23) Plaintiff Robert White's ("White") First Amended Complaint (ECF No. 21). White opposed the Motion to Dismiss (ECF No. 28), and Rutgers replied (ECF No. 29). The Court has considered the parties' written submissions and decides the motion without oral argument, pursuant to Local Civil Rule 78.1. For the reasons outlined below, Rutgers's motion is granted as to White's federal claims, and the Court declines supplemental jurisdiction over the remaining state claims.

**I.     <u>BACKGROUND</u>**

White is an undergraduate student at Rutgers majoring in aerospace engineering. (Am. Compl. ¶ 1, ECF No. 21.) He enrolled at Rutgers in Fall 2019, and is a rising senior. (*See id.* ¶¶ 19-20.) White is also disabled; he is diagnosed with "autism spectrum disorder, anxiety,

attention deficit hyperactivity disorder, obsessive compulsive disorder, episodic mood disorder, and essential tremors." (*Id.* ¶ 2.)

### A. White's Accommodation Plan under Section 504 of the Rehabilitation Act of 1973 (the "Plan")

As a result of White's disabilities, he entered the Plan with Rutgers. (*Id.* ¶ 3.) The Plan is "an agreement between [Rutgers] and . . . White to accommodate his disabilities . . . so that he can access his education equal to that of his non-disabled peers." (*Id.*)

The Plan was developed for White by the Office of Disability Services ("ODS") at Rutgers. (*Id.* ¶ 4.) The Plan takes the form of accommodation letters, which are addressed to White's specific professors (a "Letter" or "Letters"). (*Id.* ¶ 5.) Each Letter informs each professor of what ODS deemed as reasonable accommodations for White over the course of the semester. (*See id.*; *see generally* Ex. A. to Am. Compl., ECF No. 21-3 (providing various Letters sent to different professors during White's time at Rutgers).) Ultimately, the ODS Coordinator reviews, approves, drafts, and signs the Letters for each specific class. (Am. Compl. ¶¶ 6, 24.) After ODS signs, the Letters get sent to each of White's professors, individually. (*Id.* ¶ 6.) Each Letter is unique to each course. (*Id.*)

By way of example, in February 2021, a Letter was sent to White's professor for Intro to Entrepreneurship. (*Id.* ¶ 25.) That Letter specified to the professor that:

> The following accommodations are reasonable in order to provide equal access and participation in your class"[a]ccess to [sic] snacks/food/drinks during labs, class[,] and exams; [b]reaks during exams without time penalty; [e]xtended time (100%) for in class/online timed exams and quizzes; [n]o Scantrons for exams/quizzes; [p]ermission to use a laptop / tablet for note taking; [and u]se of a computer for exams/ quizzes, unless it compromises an essential function of the course.

(*Id.*) As evident from the above example, each Letter constitutes a recommendation to each individual professor as to how to potentially accommodate White.[1] (*Id.* ("The following accommodations are reasonable . . . unless [they] compromise[] an essential function of the course.").) The ODS Coordinator signs each of these Letters on Rutgers Letterhead. (*See id.* ¶ 29.)

### B. Alleged Disability Discrimination

During the Spring 2020 semester, White's General Chemistry for Engineers professor "failed to provide access to legible formula sheets and a periodic table during the first midterm." (*Id.* ¶ 33.)[2] This resulted in White failing his first midterm. (*Id.*) Separately that same semester, White's Honors College Forum professor "threatened to fail" White and sarcastically referred to him as "Professor Bob." (*Id.* ¶ 34.) The same professor called White "dishonest, selfish, and threatened to throw him out of his student group," threatening separately to give White an F in front of his classmates. (*Id.*) This professor generally singled out White, and White "believes" the professor harbored animus towards disabled individuals.[3] (*Id.*)

During the Fall 2020 semester, White's Intro to Aerospace Engineering professor refused to fully implement the Plan. (*Id.* ¶ 35.) White received a D in the course because of the professor's refusal to accommodate White's disabilities. (*Id.*)

---

[1] White characterizes the Letter as listing "the accommodation(s) . . . which the professor *is to* implement." (*Id.* ¶ 26 (emphasis added).) The plain language of the letter contradicts this interpretation. (*See id.* ¶ 25.)

[2] White does not allege that this specific professor was given a Letter which required this professor to accommodate White in this way. (*See generally* Am. Compl.) White also does not provide a Letter for General Chemistry for Engineers as an exhibit, as he does with many other courses. (*See generally* Ex. A to Am. Compl.)

[3] White provides that, upon information and belief, this specific professor was "fired" for telling students that "you'll [sic] us all look like retards." (Am. Compl. ¶ 34.)

3

During the Spring 2021 semester, Rutgers, through its professors, failed to fully implement the Plan in all of his classes.[4] (*Id.* ¶ 36.) First, White's Advanced Calculus for Engineers professor did not allow White to take breaks during examinations, notwithstanding the Plan allowing for such breaks. (*Id.* ¶ 37.) White received at least one zero on an exam as a result of this professor's refusal to allow him to take a break. (*Id.*) Second, in White's Aerospace Materials class, the professor "refused to provide" any of the recommended accommodations allowed for in the Plan. (*Id.* ¶ 38.) Specifically, as White's Advanced Calculus professor had done, White's Aerospace Materials professor did not allow White any breaks on the final exam without the threat of penalty. (*Id.*) White ultimately received a C in the class, despite White personally believing that he would have received an A had he been given a break on the exam. (*Id.*)[5] Third, and following the same pattern, White's CAD for Mechanical Engineering professor also refused to: (1) allow extended time on quizzes and exams; and (2) provide White with breaks during exams. (*Id.* ¶ 39.) As a result of these failures to accommodate, White received a D in the course.[6] (*Id.*)

---

[4] White does not seem to be alleging that Rutgers failed to provide White's professors with Letters. (*See* Am. Compl. ¶¶ 34-41.) Instead, White is alleging that Rutgers, through individual professors, failed to implement the Letters. (*See id.*)

[5] The same professor, in February 2021, failed to abide by the recommendations in the Plan after White injured his shoulder in an accident. (Am. Comp. ¶¶ 43-44.) Specifically, White's Aerospace Materials professor did not allow White to use a laptop despite White being unable to write as a result of his shoulder injury. (*See id.*)

[6] White appears to allege further that certain professors did not allow him to type notes, though the Plan allowed for him to. (Am. Compl. ¶¶ 40, 40 n.3, 41.) This allegation later appears to be directed towards two unidentified classes. (*See id.* ¶ 40 ("Because . . . White did not have this accommodation, he received a grade of TZ [(which converts to an F at the end of the semester if a grade dispute is not resolved)] and B, respectively.").) Even without clarity as to what classes White is referring to, the Court nonetheless considers these discrimination allegations more generally because they echo other more specifically pled allegations regarding a refusal by professors to follow the Plan.

In Fall 2022,[7] White was "preemptively" given zeros by his ME Measurements professor because, "on information and belief," the professor viewed White as a "problem" due to the fact that White required disability accommodations. (*Id.* ¶ 45.) Also in the Fall 2022 semester, White's Intro to Mechatronics and Intro to Music Theory professors failed to provide breaks without time penalty on tests and quizzes, as recommended by the Plan. (*Id.* ¶ 47.) White also alleges that during the Fall 2022 semester: (1) his Interdisciplinary Seminar professor "frequently denied" forty-eight-hour extensions on assignments as the Plan found reasonable, ultimately resulting in an F in the course (*id.* ¶ 48); (2) his Intro to Mechatronics professor failed to provide accommodations during the final exam, resulting in White being unable to earn a grade in the class (*id.* ¶ 49); and (3) his ME Measurements professor did not provide forty-eight-hour extensions, and when White tried to resolve the issue, the professor refused to speak to White leading White to withdraw form the class (*id.* ¶ 50).[8]

In 2023, White's Dynamic Systems and Controls professor, ME Measurements professor, Fluid Mechanics professor, and Linear Algebra professors all refused to grant forty-eight-hour extensions, as found reasonable by the Plan. (*Id.* ¶¶ 51-53.) As a result, White's grades suffered. (*Id.*) In Fall 2024, White was forced to withdraw from his classes because Rutgers "refused to accommodate his disabilities." (*Id.* ¶ 54.)

---

[7] White did not take classes at Rutgers in Fall 2021. (Am. Compl. ¶ 42.) White took his semester away from classes as an opportunity to try "to resolve the issues surrounding [Rutgers] refusal to accommodate his disabilities and the resulting grade disputes" in the previous semesters. (*Id.*) White alleges Rutgers refused to engage with White, which prevented White from resolving the issues during the preceding semesters. (*Id.*)

[8] This is the only allegation in the Amended Complaint that White tried to engage in an interactive process with a professor aimed at accommodating his disabilities. (*See generally* Am. Compl.)

5

### C. Alleged Retaliatory Acts and Departures for Internal Appeals Processes

Separately from his classes, as early as Fall 2021, White engaged a lawyer (the "Lawyer") who in-part functioned as a disability advocate. (*Id.* ¶ 56.) The Lawyer sought to ensure the Plan was implemented. (*Id.*) Rutgers, however, refused to respond to the Lawyer's correspondences. (*Id.* ¶ 57.) "[U]pon information and belief," Rutgers's Office of General Counsel instructed faculty to stop speaking to White. (*Id.* ¶ 58.) ODS later informed White that he was prohibited from having the Lawyer serve as a support person, despite internal policies that allowed for the Lawyer to serve in that capacity. (*Id.* ¶ 62.)[9]

The Lawyer was also engaged to assist White in navigating Rutgers's internal appeals process with respect to grades. (*Id.* ¶ 60 n.6.) Despite several timely appeals by White, Rutgers has been delinquent in rendering final decisions with respect to grade appeals. (*Id.* ¶ 61.)

White has also filed discrimination complaints against several professors for failure to accommodate in Rutgers's University Ethics and Compliance department ("UEC"). (*Id.* ¶ 62.) White alleges that the UEC has also been slow to act on his complaints, despite internal policies that say investigations should be "prompt." (*Id.*) Because White's various appeals are tied up in a delinquent and slow-moving process, White is unable to resolve the many issues he faces. (*Id.* ¶ 70.)

---

[9] White alleges that the Office of General Counsel got involved in the process when the Lawyer was engaged. (Am. Compl. ¶ 66.) All written appeals, the Office of General Counsel allegedly stated, should go through it so that the appeals made it to the correct personnel. (*Id.*) White alleges the Office of General Counsel, after receiving White's appeals, did not submit written appeals to the required parties. (*Id.*)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[10] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "Although we must accept the allegations in the complaint as true, we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (internal quotations omitted); *Iqbal*, 556 U.S. at 678 (holding that courts may ignore bare statements that "the-defendant-unlawfully-harmed-me" (citing *Twombly*, 550 U.S. at 555)). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[10] Unless otherwise specified, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III.  DISCUSSION

White brings ten counts against Rutgers: (1) discrimination under the Americans with Disabilities Act (the "ADA") ("Count One"); (2) discrimination under Section 504 of the Rehabilitation Act ("Section 504") ("Count Two"); (3) retaliation under the ADA ("Count Three"); (4) retaliation under Section 504 ("Count Four"); (5) denial of equal protection brought under 42 U.S.C. § 1983 ("Count Five") (collectively with Counts One through Four, the "Federal Claims"); (6) violation of the New Jersey Law Against Discrimination (the "NJLAD") ("Count Six"); (7) breach of contract ("Count Seven"); (8) fundamental fairness ("Count Eight"); (9) unjust enrichment ("Count Nine"); and (10) emotional distress ("Count 10") (collectively with Counts Six through Nine, the "State Claims"). (Am. Compl. ¶¶ 75-145.) Rutgers moves to dismiss all counts. (*See generally* Def.'s Moving Br., ECF No. 23.) For the reasons set forth below, the Court grants Rutgers's motion to dismiss the Federal Claims and the Court declines to exercise supplemental jurisdiction over the State Claims.[11]

### A.  Counts One & Two: Discrimination Under the ADA and Section 504

In bringing claims under the ADA and Section 504, a plaintiff must first adequately allege that: "(1) he has a disability, or was regarded as having a disability; (2) he was 'otherwise qualified' to participate in school activities; and (3) he was 'denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d

---

[11] Rutgers contends that "many of the claims asserted by [White] are subject to a two-year statute of limitations." (Def.'s Moving Br. 15 (collecting cases).) The Court does not reach this issue, because White fails to adequately state a federal claim upon which relief can be granted even if the Court considers the allegedly untimely allegations.

176, 189 (3d Cir. 2009)). Where a plaintiff seeks compensatory damages, as here,[12] he must go one step further; he must also allege that the discrimination he experienced was intentional. *Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014) (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261-62 (3d Cir. 2014); (Am. Compl. 34 (identifying that White seeks compensatory damages).)

As to intentionality, the Third Circuit requires a plaintiff to adequately allege that a defendant engaged in "deliberate indifference." *Cent. Dauphin*, 765 F.3d at 269 (citing *Chambers*, 587 F.3d at 189). To satisfy this standard, a plaintiff must adequately allege that the defendant had "knowledge that a federally protected right is substantially likely to violated . . ., and (2) [the defendant's] fail[ed] to act despite that knowledge. *Id.* (citation omitted). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Id.* (quoting *S.H.*, 729 F.3d at 263). "It does, however, require a deliberate choice, rather than negligence or bureaucratic inaction." *Cent. Dauphin*, 765 F.3d at 269 (internal quotation marks and citation omitted). Moreover, and importantly, the deliberate indifference standard is as-applied to the public entity, not the employee of that entity accused of the discriminatory conduct. *See Shadie*, 580 F. App'x at 70-71. In other words, here, the question is whether White adequately alleged that the Rutgers was *aware* of certain professors' discriminatory conduct and deliberately failed to act. *See id*.

Even if this Court were to accept that the various professors' conduct alleged in the Amended Complaint is sufficient to support an allegation of discrimination, White fails to allege that Rutgers was "deliberately indifferent" to that discrimination where White only alleges, at

---

[12] White also seeks restitutionary damages (Am. Compl. 34), but these damages only relate to White's alleged state law contract and quasi-contract claims sounding in unjust enrichment. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011).

9

worst, "bureaucratic inaction" on Rutgers's part. (*See, e.g.*, Am. Compl. ¶ 62 (alleging that Rutgers was made aware of professors' allegedly discriminatory behavior through the "discrimination complaint process"); *id.* ¶ 70 ("As of the date of this amended filing . . . White has filed . . . disability discrimination complaints through [Rutgers's] internal appeal system [and Rutgers] has yet to resolve these complaints. Because [Rutgers] has refused to timely address these complaints," White has been harmed.).) As such, White has failed to adequately allege deliberate indifference as required to successfully plead Counts One and Two. Accordingly, Rutgers's motion to dismiss Counts One and Two is granted.

       **B.**       **Counts Three & Four: Retaliation Under the ADA and Section 504**

To bring an ADA retaliation claim, a plaintiff must sufficiently allege that: "(1) []he engaged in a protected activity; (2) []he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cottrell v. Rowan Univ.*, 786 F. Supp. 2d 851, 859 (D.N.J. 2011) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). To successfully state a retaliation claim under Section 504, a plaintiff must similarly allege: "(1) that [he] engaged in a protected activity; (2) that [the] defendant['s] retaliatory action was sufficient to deter a person of ordinary firmness from exercising his . . . rights; and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex. rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

White's retaliation claim fails because he fails to adequately allege an adverse or retaliatory action. To be clear, White appears to allege that Rutgers's adverse action was either: (1) Rutgers's act of not responding to the Lawyer's correspondence (*id.* ¶ 88); (2) Rutgers's act of not resolving grade disputes delaying him from graduating on time (*id.* ¶ 100); or (3) Rutgers's act of no longer speaking to White because of the Lawyer's correspondences (*see id.* ¶ 58). Importantly, the

10

existence of three conflicting alleged adverse actions, in-and-of-itself, does not fairly put Rutgers on notice of the claims against it and therefore dismissal of White's retaliation claim is appropriate. *C.f. Twombly*, 550 U.S. at 555. Moreover, even if fair notice was given, White provides no case law to support the proposition that any one of these identified acts constitutes an "adverse" or "retaliatory" act within the meaning of the ADA or Section 504 absent further corroborating allegations. (*See generally* Pl.'s Opp'n Br., ECF No. 28; Am. Compl.) Instead, White appears to simply conclude that Rutgers's failure to communicate with the Lawyer, delayed appeals process, and/or refusal to speak with him directly *must* have been retaliation for him hiring the Lawyer. (*See* Am. Compl. ¶¶ 58, 88, 100.) This kind of "what-else-could-it-be" allegation is speculative in nature, and is not sufficient to survive a motion to dismiss. Accordingly, the Court cannot allow White's retaliation claims to move forward on the allegations provided. As such, Rutgers's motion to dismiss Counts Three and Four is granted.

      **C.**     **Count Five: Equal Protection**

Finally, Rutgers moves to dismiss White's equal protection claim. To bring a claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must adequately allege: (1) a deprivation of a right, privilege, or immunity secured by the Constitution and its laws; (2) purposeful discrimination by the defendant; and (3) that he received treatment different from other similarly situated individuals. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (citation omitted). Here, this Court need look no further than White's allegations as to the third element; nowhere in the Amended Complaint does White attempt to allege the existence of similarly-situated individuals that received different treatment then he did. (*See generally* Am. Compl.) To successfully do so, White would have to identify a particular non-disabled student that was treated differently than he was and who is "alike in all relevant respects." *Childs.' Health Def.,*

11

*Inc. v. Rutgers, the State Uni. of N.J.*, 93 F.4th 66, 84 (3d Cir. 2024) (citing *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020) (providing further that allegations to this end "must offer more than conclusory assertions"). White comes well short of meeting this bar where he does not even allege the existence of a particular similarly-situated student, and accordingly, Count Five is also dismissed.

      **D.**      **Supplemental Jurisdiction**

In light of the above findings and the dismissal of all Federal Claims, the Court declines to exercise supplemental jurisdiction over the State Claims. "Where[, as here,] the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citations omitted); *accord. Garges v. People's Light & Theatre Co.*, 529 F. App'x 156, 163 (3d Cir. 2013); *Haqq v. Warren Cnty. Corr. Ctr.*, No. 21-17202, 2022 WL 2473440, at *2 (D.N.J. July 6, 2022). Here, no principles of judicial economy, convenience, or fairness exist that might support this Court's exercise of continued jurisdiction. As such, this Court declines supplemental jurisdiction, and the State Claims are dismissed without prejudice. *W. Mifflin*, 45 F.3d at 788.

## IV. CONCLUSION

For the reasons set forth above, Rutgers motion to dismiss the Federal Claims is granted. The Court declines to exercise supplemental jurisdiction over the State Claims. Accordingly, White's Amended Complaint is dismissed. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
